IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

CHRISTOPHER DIPASQUALE,　　　　　§
　　　　　　　　　　　　　　　　　　§
　　　*Plaintiff*,　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. 1:26-CV-00130
JAMESBULLZS; the BYBIT OFF-RAMP　§　　JUDGE MICHAEL J. TRUNCALE
DEFENDANT; the BINANCE OFF-RAMP　§
DEFENDANT; and JOHN DOES 1 – 20,　§
　　　　　　　　　　　　　　　　　　§
　　　*Defendants*.　　　　　　　　　§

**ORDER GRANTING PLAINTIFF'S MOTIONS FOR EMERGENCY**
***EX PARTE* TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, AND**
**ALTERNATIVE SERVICE OF PROCESS**

Plaintiff Christopher DiPasquale (DiPasquale) has filed an Emergency Motion for *Ex Parte* Temporary Restraining Order [Dkt. 3], a Motion for Expedited Discovery [Dkt. 4], and a Motion for Alternative Service of Process [Dkt. 5] (together, the Motions). DiPasquale seeks an order freezing bank accounts associated with Defendants JamesBullzs, the ByBit Off-Ramp Defendant, the Binance Off-Ramp Defendant, and John Does 1-20 and authorizing DiPasquale to issue subpoenas to various third parties likely to be in possession of information about the Defendants. The Court has reviewed DiPasquale's Motions and finds that, for the reasons set out therein, he faces a risk of irreparable harm if the requested relief does not issue. The Court also finds that notice to the Defendants should not be required. Accordingly, DiPasquale's Motions are hereby **GRANTED**.

## I.　BACKGROUND

DiPasquale alleges that the Defendants defrauded him of over $400,000 by posing as technical support personnel for TrustWallet, an online cryptocurrency-trading platform. *See* [Dkt. 1 at ¶¶ 27–30, 45–49]. On October 12, 2025, DiPasquale encountered technical difficulties with his TrustWallet account, and took to the internet to find solutions. *Id.* at ¶ 27. While searching on X, formerly known as Twitter, DiPasquale came across an account belonging to Defendant JamesBullzs. *Id.* JamesBullzs claimed to be a

- 1 -

technical support representative of TrustWallet and had recently engaged several other users about TrustWallet-related topics. *Id.* at ¶ 28. When DiPasquale inquired about resolving his technical issue, JamesBullzs directed him to an online form, which JamesBullzs claimed was an official TrustWallet technical support portal. *Id.* The form asked for DiPasquale's account information, including his "seed phrase," which JamesBullzs assured him was necessary to resolve the issue. *Id.* When DiPasquale submitted the form, JamesBullzs used the information to access DiPasquale's account and transfer out its entire $417,306 balance. *Id.* at ¶ 29.

DiPasquale's money passed through several blockchain addresses before being deposited into accounts at Binance and ByBit, two popular cryptocurrency exchanges. *Id.* at ¶ 35. $328,200 ended up in ByBit accounts belonging to an unknown actor referred to in DiPasquale's complaint as the "ByBit Off-Ramp Defendant." *Id.* at ¶ 45. An additional $11,000 ended up in a series of accounts owned by another unknown actor, called the "Binance Off-Ramp Defendant" in DiPasquale's complaint. *Id.* at ¶ 49. The whereabouts of the remaining $78,106 are unknown. *See id.* at ¶¶ 45, 49.

## II.   ANALYSIS

### A. Temporary Restraining Order

#### 1. Procedural Requirements

The standard for issuing an *ex parte* temporary restraining order has both procedural and substantive components. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." *See* FED. R. CIV. P. 65(b)(1)(A)–(B).

DiPasquale satisfies both requirements. DiPasquale's Complaint and Motion, and the declaration of its expert, Evan Cole, show a substantial likelihood of immediate and irreparable injury or loss. These materials suggest that DiPasquale fell prey to a cryptocurrency scam and that his lost assets are likely to

become irretrievable if immediate relief does not issue. *See* [Dkt. 1 at ¶¶ 27–29, 45–49]. This Court, and several others, have issued *ex parte* restraining orders in similar cryptocurrency-fraud cases.[1] The facts of this case do not move the Court to deviate from its usual practice.

DiPasquale's attorney has also made a certified declaration explaining why notice should not be required. [Dkt. 3-2]. Courts may enter *ex parte* orders when providing notice to adverse parties would be impracticable or "would render fruitless [the] prosecution of the action." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). In the context of an order freezing assets, notice is unnecessary if the adverse parties "are likely to dissipate assets and destroy business documents." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Under these circumstances, the very act of providing notice would "cause immediate and irreparable injury or damages to the Court's ability to award effective final relief." *Id.* This rationale applies with special force in cryptocurrency-fraud cases.[2]

---

[1] *See, e.g.*, *Harris v. Upwintrade.com*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex. Aug. 8, 2024) (Truncale, J.) (granting TRO in functionally identical pig-butchering case); *Cohn v. Popescu*, No. 1:24-cv-00337, 2024 WL 4525511 (E.D. Tex. Aug. 16, 2024) (Truncale J.) (same); *Ohlin v. Defendant 1*, No. 3:23cv8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DAD-BAK (BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

[2] *See, e.g.*, *Gaponyuk v. Alferov*, No. 2:23:CV-01317-KJM-JDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable."); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

Here, the Court is satisfied that providing notice to Defendants would be impracticable and would defeat the purpose of prosecuting the lawsuit. DiPasquale alleges that the Defendants are foreign nationals whose true identities are unknown. [Dkt. 1 at ¶¶ 6–9]. The Defendants' physical addresses, phone numbers, or email addresses are likewise unknown. *See id.* at ¶¶ 6–9. Other than JamesBullzs's X account, no Defendant has any known point of contact. *See* [Dkt. 5 at 3]. Accordingly, providing notice would be impracticable. *See Ohlin*, 2023 WL 3676797 at *2.

DiPasquale's allegations also support his contention that providing notice to the Defendants would render his lawsuit futile because notifying the Defendants DiPasquale's Motions would merely prompt them to hide their ill-gotten assets. *See* [Dkt. 3 at 6]. If, as alleged, Defendants misappropriated DiPasquale's funds by impersonating TrustWallet technical support staff, it follows that they would likely conceal those funds if given notice of DiPasquale's Motions. *See Ohlin*, 2023 WL 3676797 at *2. Under these circumstances, issuance of an *ex parte* order is justified. *See id.*

### 2. Substantive Requirements

Having found that DiPasquale meets the procedural requirements for issuance of an *ex parte* restraining order, the Court now turns to the substantive requirements. To obtain a temporary restraining order, a movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (per curiam) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

DiPasquale meets all four substantive requirements. On the merits, DiPasquale makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, fraudulent inducement, and conversion. [Dkt. 1 at ¶ 10]. DiPasquale has alleged and provided evidence that the Defendants deceived DiPasquale and misappropriated his assets in what appears to have been an intentional scam. *See* [Dkt. 3 at ¶¶ 27–29, 45–49; Dkt. 3-1]. DiPasquale's

- 4 -

allegations bear all the telltale characteristics of a cryptocurrency scam, suggesting that DiPasquale will indeed be able to prevail on its claims once a full evidentiary record is developed. *See* [Dkt. 3 at ¶¶ 27–29, 45–49; Dkt. 3-1].[3]

DiPasquale has also demonstrated a substantial likelihood that he will suffer irreparable harm without the relief he seeks, for the same reasons outlined above. The instantaneous and opaque nature of cryptocurrency transactions, combined with the Defendants' cagey behavior, makes it unlikely that DiPasquale will recover his lost assets unless the Defendants are precluded from withdrawing or transferring the contents of their accounts. Accordingly, the Court finds that DiPasquale's request to freeze the Defendants' accounts is justified by a substantial threat of irreparable harm. *See Jacobo*, 2022 WL 2052637, at *3.

Next, the Court finds that the threatened injury to DiPasquale outweighs any harm the Defendants may suffer by virtue of having their accounts frozen. Again, maintaining the assets at the destination accounts is perhaps DiPasquale's only realistic chance to obtain recovery in this case. At worst, the Defendants will be temporary unable to move assets until the injunction is lifted. *See Jacobo*, 2022 WL 2052637, at *6 (finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

Finally, the Court finds that DiPasquale's requested injunction serves the public interest. DiPasquale's case is merely a drop in a vast ocean of similar scams. *See* [Dkt. 1 at ¶ 1]. A freezing order will serve the public interest here both by deterring would-be fraudsters and by "providing assurance to

---

[3] The Court also notes that DiPasquale seeks an asset freeze in the form of a constructive trust over specific, traceable stolen assets. [Dkt. 2 at 12]. This type of relief is common in cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that *"*numerous district courts . . . have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

the public that courts will take action to promote . . . recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6; *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

### B. Expedited Discovery

Typically, parties may not seek "discovery from any source before the parties have conferred as required by Rule 26(f)." FED R. CIV. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted where "authorized . . . by court order." *Id*. Although the Fifth Circuit has not adopted a standard by which authorization may be issued, several district courts in the Fifth Circuit apply a "good cause" standard to determine whether such an order should issue. *Cothran v. Koomson*, No. 4:20-CV-481-SDJ, 2020 WL 6450498, at *1 (E.D. Tex. Nov. 3, 2020) (Jordan, J.); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239–40 (S.D. Tex. 2011) (collecting cases) (applying good cause standard). Good cause exists when "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party."[4] *St. Louis Group*, 275 F.R.D. at 239 (internal quotation marks and citation omitted).

Many courts, including this Court, have authorized expedited discovery from cryptocurrency exchanges in cryptocurrency-fraud cases like this one. *See, e.g.*, *Harris*, No. 1:24-cv-00313-MJT, at p. 14 (authorizing expedited discovery); *Cohn*, 2024 WL 4525511, at *5 (same); *Strivelli v. Doe*, No. 22-cv-22060, 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (authorizing expedited discovery from cryptocurrency exchanges and noting "the Court's review of cryptocurrency theft cases reveals that courts

---

[4] More specifically, in determining whether good causes exists, a court weighs the following factors:

> (1) [W]hether the plaintiff has made a prima facie case of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) whether there is a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy.

*Cothran*, 2020 WL 6450498, at *2 (citations omitted). Plaintiff did not explicitly address these factors in the pending motion. *See generally* [Dkt. 2]. However, given its contents, the Court finds that Plaintiffs has made a sufficient showing on these factors.

often grant motions for expedited discovery to ascertain the identity of John Doe defendants."); *Licht v. Ling*, No. 3:23-CV-1018-X, 2023 WL 4504585, at *4 (N.D. Tex. June 20, 2023) (issuing broad authorization for expedited discovery in functionally identical crypto-fraud case and requiring that "any party served with a request for production shall produce all requested items within 72 hours of the request").

Here, DiPasquale requests expedited discovery for the purpose of locating his stolen assets and identifying the individual perpetrators of the scheme. [Dkt. 4 at 5–7]. To accomplish this, DiPasquale anticipates needing information held by non-parties, including "biographical and contact information associated with the Defendants' accounts," "IP-address and device logs showing the devices and locations from which the Defendants accessed their accounts," and more. *Id.* at 5. Because non-party cryptocurrency exchanges hold most of the information DiPasquale seeks, DiPasquale also requests the Court's authorization to serve subpoenas. *Id.* at 6–7. If DiPasquale's subpoenas uncover information implicating "downstream entities" in the pig-butchering scam, he intends to serve subpoenas on those entities as well. *Id.*

This Court has authorized expedited discovery in tandem with temporary restraining orders freezing assets in cryptocurrency-fraud cases. *See, e.g.*, *Cohn*, 2024 WL 4525511, at *5. Finding this case similar in all relevant respects to those cases, the Court authorizes the scope of discovery requested by DiPasquale here.

### C. Alternative Service of Process

Finally, DiPasquale seeks authorization to serve process on Defendants via alternative methods. [Dkt. 2 at 17]. Under Federal Rule of Civil Procedure 4(f)(3), a district court may order service on foreign defendants via any method "reasonably calculated to give notice of the proceedings" and not prohibited by international agreement. *See* FED. R. CIV. P. 4(f)(3). Here, DiPasquale seeks to serve the Defendants via JamesBullzs's X account. *See* [Dkt. 3-1 at 4].

The Court finds that DiPasquale has satisfied the requirements for alternative service under Rule

4(f)(3). Because the scheme that Defendants allegedly operated bears all the characteristics of a standard cryptocurrency scam, the Court is satisfied that the Defendants are located abroad. *See* [Dkt. 1 at ¶¶ 27–29, 45–49; Dkt. 5-1 at ¶¶ 2–3].

Second, the Hague Convention, which generally governs service of process on foreign defendants, does not apply here because the Defendants' physical addresses are unknown. *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 1, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Hence, no international agreement prohibits serving the Defendants via their X accounts.

Third, service on the Defendants via JamesBullzs's X account is reasonably calculated to give Defendants notice of the proceedings. X was JamesBullzs's exclusive means of communicating with DiPasquale during the pendency of the scam. Accordingly, service via X is likely the most effective way to give the Defendants notice of suit.[5]

### III. RELIEF GRANTED

### A. Temporary Restraining Order

For the reasons set out in the Motion, the Court finds that the accounts associated with the deposit addresses listed on page 6 of Plaintiff's Proposed Order [Dkt. 3-3] should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-referenced Receiving Addresses, or any business entity through which they act or which acts in active concert or participation

---

[5] *See Fitzgerald v. Defendant 1*, No. 1:24-CV-21925, 2024 WL 3538245, at *3 (S.D. Fla. June 28, 2024) (authorizing service via Telegram message in pig-butchering case); *Licht v. Ling*, No. 3:23-CV-1018, Dkt. 19 (N.D. Tex. June 8, 2023) (authorizing service via WhatsApp in pig-butchering case).

with them; including but not limited to those assets currently held at or for the Receiving Addresses. In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiff.

## B. Expedited Discovery

The Court finds that Plaintiff's request to issue expedited discovery should be **GRANTED** for the reasons set out in the Motion. Plaintiff is authorized to serve subpoenas on the following third parties:

- X Corp. (fka Twitter)
- Binance, Ltd.
- Bybit Fintech Limited

All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiff's counsel within seven (7) days of their receipt of Plaintiff's subpoena and this Order. The Court further authorizes Plaintiff to issue follow-on subpoenas seeking the same scope of information to additional internet-service providers and cryptocurrency exchanges determined to be in possession of relevant information based on information obtained from the initial subpoenas authorized herein

The Court finds that any privacy interest the Defendants have in the documents requested by Plaintiff is outweighed by the need to investigate and prosecute the theft and conversion alleged in the complaint. Such privacy concerns shall not be good cause for the subpoenaed party to withhold the requested material.

## C. Alternative Service

The Court finds that Plaintiff's request for authorization to serve the Defendants by alternative means should be **GRANTED** for the reasons set out in the Motion. Plaintiff is authorized to serve the Defendants by the following methods:

| Target | Method |
| --- | --- |
| @JamesBullzs | X (fka Twitter) |

- 10 -

Service by the above methods shall constitute effective service of process on the Defendants for all purposes in this action.

It is so **ORDERED.**

**SIGNED this 13th day of May, 2026.**

_____
Michael J. Truncale
United States District Judge